GONZÁLEZ *v.* MÉNDEZ ET AL.

APPEAL from the District Court of Humacao.

No. 334.—Decided November 19, 1909.

RES JUDICATA—MEANING THEREOF AND WHAT CONSTITUTES SAME.—In this opinion the court discusses the meaning of the term *res judicata,* what constitutes

the same, and what is necessary to the presumption thereof as defined in section 1219 of the Revised Civil Code.

ID.—IDENTITY OF PARTIES.—There is identity of parties defendant in two actions, when in the second action there are parties defendant who were not defendants in the first action but who are, nevertheless, jointly bound.

ID.—ADDITIONAL PARTIES DEFENDANT.—The fact that there are additional parties defendant in a second action who are mortgage creditors, assignees, or who are similarly related, does not destroy the character of *res judicata.*

ID.—IDENTITY OF ACTION.—Where the annulment of a conveyance of the property of her minor daughter is sought by a mother by reason of the fact that she was without judicial· authorization to make the conveyance, and in another action the annulment thereof is sought on the ground that the mother did not have the *patria potestas* of her daughter, the object of both actions being to recover an inheritance and annul a deed of conveyance, there exists an identity of actions which goes to constitute *res judicata.*

ID.—IDENTITY OF ACTIONS—DIFFERENT GROUNDS FOR ANNULMENT.—The identity of actions necessary to the existence of *res judicata* is present, although the grounds or reasons for the annulment of the conveyance alleged in such actions are different when the object of such actions is the same. (Judgment of the Supreme Court of Spain, March 14, 1898.)

ID.—JUDICIAL DECLARATION OF THE VALIDITY OF A TITLE—STABILITY OF SUCH DECLARATION.—Where a title has been once judicially declared valid by a final judgment, the efficacy of such title cannot be assailed, as otherwise business transactions would suffer great confusion.

The facts are stated in the opinion.

*Mr. Benítez Castaños* for appellant.

*Messrs. Juan Hernández López* and *Juan Guzmán Benítez* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

1. By public deed, No. 177, executed in the town of Yabucoa under date of September 21, 1891, before Notary Marcelino Estebanez Nanclares, an ordinary general commercial partnership was constituted, with residence in said town, by Domingo González y González, Jacinto ·Gómez Sierra, Manuel Méndez Rodríguez and Juan Antonio Ramón and Manuel Méndez Argodilla y Rodríguez, the last two represented by José Rodríguez de las Albas. To this partnership, which was to engage in the purchase and sale at wholesale and retail of merchandise, provisions, native products, and any other goods of legal commerce, and which was to do business under the firm name of González, Méndez & Co., the first three above-named to be the managing partners thereof, Domingo

González contributed 48,620.87 *pesos,* Manuel Méndez, 841.46 *pesos,* and Juan Antonio Ramón and Manuel Méndez Argodilla, 49,860.85, these sums making a total of 107,927.44 *pesos* in the money then current, consisting in the merchandise, property and stock on hand which belonged to them in the company which had been doing business under the same firm name in said town, the liquidation of which the new company had assumed charge of. The stipulations of the partnership agreement included among others that the new firm should continue for a period of two years from the first day of said month of September to expire on August 31, 1893, and that if, during said term, any of the partners should die, the firm would continue until the termination of such period with the heirs of the deceased partner or partners, said heirs acquiring the same rights as their predecessors in interest, except in so far as the management and administration thereof were concerned.

2. By public deed No. 185 of August 9, 1893, the firm of González, Méndez & Co. was continued for another year under the same agreements and stipulations under which it was constituted; and by another public deed, No. 185, of August 25, 1894, it was again continued in the same form, with the additional stipulations therein contained for another year to expire on August 31, 1895, the persons interested agreeing that if, during the last month of said period, any of the partners should not express a desire to withdraw from the partnership, the term thereof would be considered as extended without further action or the necessity of a new deed for another year to expire on August 31, 1896. By the deed last mentioned the said firm was also changed through the admission as an industrial partner of Manuel García Fernández.

3. Domingo González died on March 26, 1895, leaving a closed will made on the 11th of said month, which was, by judicial order, filed in the notarial office of Humacao under date of the 30th of said month of March. In this will

González acknowledged Carmen Resto, born in the year 1882, to be his natural daughter, he declared as his property all that might be due him at the time of his death from all sources, in the commercial firm of González, Méndez & Co., of which he was a managing partner, he constituted as his only and universal heirs his legitimate mother, Vicenta González and his said natural acknowledged daughter, in equal parts, and appointed as his joint executors Jaime Gómez Sierra, Andrés Antelo y Antelo and Jaime Bague y Pujais.

4. Under date of June 28 of said year 1895, Jacinto Gómez Sierra, one of the executors, and Petrina Resto, the mother of the said minor, Carmen González Resto, proceeded by common consent, to make a general inventory and appraisement of the property which Domingo González left at his death, and they declared in a private document, signed by them and by witnesses Gregorio Borríos and Juan Ayuso, that the term of the commercial firm of González, Méndez & Co. of which firm Domingo González had been a managing partner, not having terminated as yet, and as it was consequently impossible to determine exactly the interest or amount which might be due Domingo on the said date, said interest was conservatively estimated and fixed at the sum of 37,500 *pesos,* without prejudice to what it might amount to at the termination and liquidation of the said firm, to which sum should be added the value of the 25 shares of the Banco Territorial y Agrícola belonging to González, for which he had paid 1,450 *pesos* which item added to the other sum, gives a total of 38,950 *pesos.*

5. Under the inventory and appraisement mentioned, Jacinto Gómez Sierra and Petrona Resto, as the mother of the minor, Carmen González Resto, proceeded on the said date, June 28, 1895, to make a provisional liquidation of the property inventoried, in order to make the payment of taxes on the transfer of the inheritance, and, without prejudice to amending the liquidation, if this should be proper, in view of the result of the liquidation of the firm of González, Mén-

dez & Co., they set forth in a private document signed by both that the value of the estate inventoried amounted to 38,950 *pesos,* from which 1,000 *pesos* was to be deducted, which represented a legacy by González to the minor Leonor Martínez, thus leaving for distribution among the heirs, Vicenta González and Carmen González Resto, 37,950 *pesos,* each of them to receive, under the will of the testator, 18,975 *pesos.* In a letter dated February 2, 1896, from Andrés Antelo to Petrona Resto, the former informed the latter that the interest of Domingo González in the commercial firm of González, Méndez & Co. on the 17th of July of the preceding year, when an inventory had been taken, amounted to 67,252.43 *pesos.*

6. Under these circumstances, under date of June 19, 1896, Manuel Méndez Rodríguez, Jacinto Gómez Sierra, Manuel García Fernández, Petrona Resto y Negrón and Manuel Lomba Peña, Gómez and García in their own right, and Méndez in his own right and as the attorney in fact of his mother, María Rodríguez López and of his brother and sister, Juan and María Méndez Rodríguez, of whom María acted in her own right and on behalf of her minor children, Ceferino José and another José Méndez Rodríguez, Petrona as the legal representative of her minor daugther under her parental power, Carmen González Resto, and Lomba as the attorney in fact of Vicenta González Alonzo, executed in the town of Yabucoa, before Notary Marcelino Estebanez Nanclares, an instrument covering the withdrawal of a partner, the assignment of rights and actions and the modifications of a commercial firm, which instrument includes the following clauses:

"First. The parties hereto, Petrona Resto and Manuel Lomba y Peña, the first in the name and on behalf of her minor daughter, Carmen González y Resto, who has been placed under her parental power, complying with the promise of sale made in deed No. 89, executed under my certification on May 20 last, and the latter on behalf and as the attorney in fact of Vicenta González y Alonzo, by virtue of the power of attorney inserted, assign and convey to the said firm of González, Méndez & Co., represented by the partners

thereof present, the share, interest and all rights and actions of all kinds now belonging in undivided form or which might belong hereafter in each and every one of the belongings, real, or personal property and chattels and property rights, or property of any other class of said firm, to their principals the said Carmen González Resto and Vicenta González y Alonzo, as the daughter and mother, respectively, and heirs of the deceased Domingo González y González, the manager of said firm, subrogating the latter in the place, stead and rights of the assignors, for the stipulated price of 24,000 *pesos*, special national money, which actual value they fix by mutual agreement with the other partners as a just price, which sum they estimate that the total interest or share of the deceased partner, González, in said firm after its liquidation may be reduced, of which sum or price the said Petrona and Manuel Lombá acknowledge at this act, in my presence and in that of the witnesses to have received from the purchasing firm, one-half each to their entire satisfaction in the capacities mentioned to whom they execute on said ground and in said sum—that is to say, 12,000 *pesos* each in the said capacities—a formal and valid receipt in full by means of this instrument.

"Second. The assignors bind their principals to be responsible for the legitimacy of the rights they assign and for the capacity with which they make the assignment, as also to warranty in accordance with the law; the vendee firm will enter in possession and shall be considered the sole owner of the rights and property it acquires from this date and without the need of any other act than the execution of this instrument, the parties explaining that under the express agreement entered into the assignment the subject of the proceeding clause shall be considered to comprise the share or interest which the deceased, Domingo González, had as such partner in all firm, as described in the respective titles of acquisition which will be presented in the registry of property of the district together with the will of the deceased, González, and a copy of this instrument, for the proper records.

"Third. That in agreeing on the assignment referred to in the second clause, it has been agreed between the parties hereto that the said firm is obliged to pay the legacy of 1,000 *pesos* which the deceased, Domingo Ganzález, left by the fifth clause of his will to the minor, Lenor Martínez, natural daughter of Juana Martínez, as well as the income fixed for said legacy, to which payment the said firm obligates itself in the form and terms prescribed in said will; and that the assignment includes also the value of the 25 shares of the Banco Territorial y Agrícola de Puerto Rico, which became

the exclusive property of the assignee firm of González, Méndez & Co., and which had belonged to the deceased, González, and appear under number two in the general inventory which had been made of the property constituting the estate left by Domingo González by his executors under date of June 28, 1895, for the payment to the Treasury of the taxes on the transfer of said estate, which was done under the proper provisional liquidation dated June 28, 1895; and it is the will of the persons interested that said provisional liquidation be held and considered as definitely made, inasmuch as the capital of 38,950 *pesos* therein declared, instead of increasing, has become reduced to the sum of 24,000 *pesos,* as shown in the first clause of this instrument.

''Fourth. By virtue of the assignment of rights and actions to which the first clause of this instrument refers, Carmen González Resto and Vicenta González Alonso, as such heirs of the deceased partner, González, withdraw from said firm of González, Méndez & Co., without any right to the property and assets of the latter.

''Fifth. It is the will of the parties hereto, Manuel Rodríguez, Jacinto Gómez Sierra and Manuel García Fernández, all three in their own right and the first named in addition in the capacity he shows, that the said firm of González, Méndez & Co., of which they now remain the only interested partners, continue until the termination of the period fixed in its last extension and that from and after this date the said firm shall be considered modified in the following form and terms: 1. That Manuel García who was an industrial partner according to the second clause of deed No. 185 of August 25, 1894, aforementioned, becomes a general and managing partner with the right to use the firm name, with the same powers which have been established for the other two managing partners prescribed in the sixth clause of deed No. 177, which has also been mentioned, of September 21, 1891, by which said firm was constituted, and contributing to the capital of the same the sum of 6,084.60 *pesos* in the special national money, which represents the amount of the profits due him as the industrial partner according to the last general balance, subject to the stipulations made when he entered as such industrial partner. '2. That the name of the deceased partner, González, be eliminated from the firm name heretofore used by the partnership, and that it be constituted with that of the other managing general partner, Gómez, it being understood that the name adopted and that under which is is to do business hereafter is that of Gómez, Méndez & Co.' ''

7. By a subsequent public instrument of January 31, 1900, the commercial firm of Gómez, Méndez & Co. was dissolved and declared in a state of liquidation.

8. With these antecedents, on January 29, 1901, Petrona del Carmen González Resto, accompanied by her husband, Pablo Delfín Cuesta who had been appointed her guardian *ad litem,* filed a complaint against all the parties to the instrument of June 19, 1896, who have been named, alleging as facts that Domingo González had acknowledged her in his closed will which had been filed in the notarial office on March 30, 1895, to be his natural child, constituting her the heir to one-half of all his property consisting of his interest in all the assets of the commercial firm of González, Méndez & Co., engaged in trade in Yabucoa, established by instrument of September 21, 1891, and extended the first time on August 9, 1893, and afterwards with modifications on August 25, 1894; that under said instrument of September 21, 1891, Domingo González contributed to the establishment of the firm of González, Méndez & Co. the sum of 48,620.85 *pesos* in provincial money; that when an inventory or balance of all the assets of said firm was made ʼon July 17, 1895, it showed a net balance amounting to 67,252.43 *pesos* of said provincial money in favor of Domingo González; that notwithstanding this positive and large profit, Petrona Resto y Negrón, the mother of the plaintiff, by instrument executed in Yabucca on June 19, 1896, sold all the rights of ownership of her daughter in property of all kinds, to the other partners of the firm of González, Méndez & Co. for the very low price of 12,000 provincial *pesos;* and that subsequently the firm of Gómez, Méndez & Co., the successor of González, Méndez & Co. was dissolved by instrument of January 31, 1900, the partners dividing among themselves the common partnership assets; and invoking as legal grounds sections four and 164 of the Civil Code, and alleging furthermore that prescription of actions does not begin to run against minors until they attain their

majority, and that a litigant bringing an action knowing that he has no ground therefor must pay the costs, she concluded with the prayer that notice of the complaint should be served on Petrona Resto, Manuel Fernández Rodríguez, Jacinto Gómez Sierra, Manuel García Fernández, María Rodríguez López in her own right and on behalf of her minor children, José Méndez Rodríguez and another of the same name and surnames, Ceferino Méndez Rodríguez, Juan and María Méndez Rodríguez and Vicenta González Alonso, and that the instrument modifying the commercial firm of González, Méndez & Co., including the assignment of actions and rights executed by the defendants on June 19, 1896, be held by final judgment to be null and void and that it be ordered that matters return to the same status they had before the execution of said deed, and that, in accordance with the law, the commercial firm in existence before said date be liquidated with the intervention of the legal representative of the plaintiff, as the heir of the managing partner, Domingo González, whose net share shall be delivered to her after deduction of the sums she may have received, plus legal interest on the sums not received, with the costs of the proceedings against the defendant.

9. The complaint was accompanied by certified copies of instrument No. 177, of September 21, 1891, relating to the constitution of the commercial firm of González, Méndez & Co., of No. 69, executed on March 30, 1895, relating to the protocolization of the closed will of Domingo González, of No. 118, executed on June 19, 1896, relating to the modification of the firm of González, Méndez & Co., with the assignment of rights and actions, and of No. 29 on January 31, 1900, relating to the dissolution and declaration in a state of liquidation of Gómez, Méndez & Co.; the letter of February 2, 1896, addressed to Petrona Resto and signed by Andrés Antelo; a certificate of the record of the baptism of the plaintiff, who was born on August 5, 1892; and another certificate of the record of the marriage of Petrona del Carmen González Res-

to to Pablo Delfín Cuesta y Tolentino, which took place on
January 13, 1901.

10. The defendant, Vicenta González Alonso, contested
the complaint, making answer thereto and maintaining the
legal value of the said instrument of June 19, 1896, the annul-
ment of which is sought.

11. Messrs. Gómez, Méndez & Co. also answered the com-
plaint, contesting it in the same manner as Vicenta Gonzá-
lez Alonso, and alleging furthermore that the action was
barred under the statute of limitations, in accordance with
the provisions of section 947 of the Code of Commerce.

12. The default of Petrona Resto was ordered entered in
said proceedings on March 29, 1902, and the prosecution
thereof continued in her default.

13. The District Court of Humacao, under the date of
April 18, 1903, rendered final judgment in said action, the
adjudging portion of which reads as follows:

"*We adjudge:* That we should and we do hold to be null and
void in so far as the plaintiff Petrona del Carmen González Resto
is considered, the instrument of the withdrawal of a partner with the
assignment of rights and actions and the modifications of the com-
mercial firm, executed by Manuel Méndez Rodríguez in his own right
and on behalf and as the attorney in fact of his mother, María Rod-
ríguez López, and his brother and sister, Juan and María Méndez
Rodríguez, the first named in her own right and on behalf of her
minor sons, Ceferino, José and another José Méndez y Rodríguez,
Jacinto Gómez Sierra and Manuel García Fernández, both in their
own right; Petrona Resto y Negrón, on behalf of her minor daughter,
Carmen González Resto, and Manuel Lomba Peña on behalf and as
the attorney in fact of Vicenta González Alonso, before Notary Mar-
celino Estebanez Nanclares, in Yabucoa, on June 19, 1896, and, con-
sequently, we adjudge the defendants Petrona Resto, Manuel Méndez
Rodríguez, Jacinto Gómez Sierra and Manuel García Fernández,
María Rodríguez López, in her own right and on behalf of her minor
children José Méndez Rodríguez and another of the same name and
surnames, Ceferino Méndez Rodríguez, Juan María Méndez Rodrí-
guez and Vicenta González y Alonso, as the legitimate mother of
Domingo González y González, to return matters to the condition and

status in which they were at the time of the execution of said public instrument, and that in accordance with the law they liquidate the commercial firm of González, Méndez & Co. existing before said date, with the intervention of Pablo Delfín Cuesta y Tolentino, the present representative of his wife, the minor plaintiff and heir of the partner of Domingo González y González, whose share they shall deliver to her after deduction of the sums received under the contract annulled, plus legal interest, the difference to make up her share being delivered to her plus legal interest from the date of the execution of the contract annulled. The defendants are further adjudged to pay the costs of this litigation."

14. Counsel for the members of the firm of Gómez, Méndez & Co.—that is to say, for all the defendants, excepting Vicenta González Alonso and Petrona Resto—took an appeal from this judgment, which was admitted, and after the legal proceedings had been had the Supreme Court of Porto Rico decided the appeal, rendering final judgment on March 31, 1905, by which it was held that the complaint filed by Petrona del Carmen González Resto, accompanied by her husband, Pablo Delfín Cuesta, did not lie, rendering judgment in favor of all the defendants and reversing the said judgment of the District Court of Humacao appealed from, dated April 18, 1903, with the costs against the plaintiff.

15. From the judgment of the Supreme Court of Porto Rico the plaintiff took an appeal to the Supreme Court of the United States, which was admitted, and she furnished the undertaking required, but never prepared the record nor did she appear in due time in the Supreme Court of the United States.

16. The defendants and respondents appeared in the Supreme Court of the United States and prayed that the appeal should be held to have been abandoned, which prayer said Supreme Court granted, dismissing the appeal and making the judgment of the Supreme Court of Porto Rico final.

17. Upon presentation to the Supreme Court of Porto Rico of the final judgment of the Supreme Court of the United States, the record was returned to the District Court of Hu-

macao together with a certified copy of the definite and final judgment of the Supreme Court of Porto Rico, for compliance and execution, in accordance with the law; and affairs are in this state at the present time.

Now, with these same facts as a basis, Carmen González Resto, now of age, and who had been represented by her husband when a minor, Delfín Sierra Cuesta, who had been appointed her guardian *ad litem,* brought another action.

This action does not include among the defendants all the parties to the instrument of June 19, 1896, which related to the withdrawal of a partner, the assignment of rights and actions pertaining to the plaintiff by right of inheritance and modification of the commercial firm of González, Méndez & Co., but the action is directed against Manuel Méndez Rodríguez, Jacinto Gómez Sierra and Manuel García Fernández, as the continuation of that aforecited, against Petrona Resto Negrón, the mother of the plaintiff, and against the American Colonial Bank and Successors of L. Villamil & Co., because the last two hold a mortgage constituted on a number of estates of the 16 which had belonged to González, Méndez & Co. in which the plaintiff had an interest as the heir of her father, Domingo González y González, and which are now recorded in the registry of property in the name of Gómez, Méndez & Co. by virtue of the assignment to which reference has been made.

In the new complaint judgment is prayed for as follows:

"First. That the instrument of June 19, 1896, executed before Notary Estebanez and the contract of the assignment of rights and actions therein contained, is null and void in so far as it prejudices the right of the plaintiff; that the mortgage deed of August 3, 1901, executed before Notary Guzmán Benítez, is also null and void in so far as it affects the rights of the appellant; and that the mortgage obligations constituted by deeds of June 23, 1901, and May 12, 1903, before said notary, Guzmán, both of them in favor of the firm of Successors of L. Vallamil & Co., are also void in so far as the rights of the plaintiff are concerned, and that the mortgage guarantees of

said credits must be reduced to the interests of the other coowners in the real property encumbered, and, therefore, that they be canceled with respect to the interests of the plaintiff.

"Second. That the defendants, the liquidators of Gómez, Méndez & Co., which continued the firm of Gómez, Méndez & Co., make restoration to the plaintiff of her hereditary interest in the estates described in the eleventh statement of fact of this complaint, and to this end, that the registrar of property make the proper records for the purpose of keeping alive the records in favor of the petitioner.

"Third. That said liquidators of Gómez, Méndez & Co. pay the plaintiff the sum of $20,000, at which she estimates the income and profit not received since the date of the death of her father to the present date, plus legal interest on said $20,000 from the date the complaint was filed until final payment.

"Fourth. And, finally, the plaintiff prays that the costs be taxed against the defendants and further prays that the court make the proper pronouncements in her favor and grant her the general remedy which may lie in equity and justice in this case. San Juan, P. R., July 10, 1907. (Signed) Eugenio Benítez, Attorney for the Plaintiff."

The defendants absolutely opposed said claims, except Petrona Resto Negrón who did not make answer to the complaint and who was declared in default.

On April 30, 1908, the Humacao Court, "after hearing the allegations of the parties, the documentary evidence and the testimony of the witnesses, rendered judgment holding that the law and the facts were. in favor of the defendants, and, therefore, ordered that the plaintiff do not recover anything from the defendants and that the latter be relieved of all claims with respect to this complaint, with the costs against said plaintiff."

The plaintiff took an appeal from this judgment to the Supreme Court, and filed a statement of facts duly approved by the trial judge.

In this appeal there is no issue on the facts. The parties agree thereon and all that remains to be decided are the following points. of law:

First. If the presumption of exception of *res judicata* alleged by all the defendants upon making answer to the complaint exists.

Second. If Petrona Resto Negrón, juridically speaking, may be considered the natural mother of Petrona del Carmen González, the plaintiff in this case.

Third. If being the natural mother she ever had parental power over her minor daughter.

Fourth. Whether the instrument of June 19, 1896, is void, owing to Jacinto Gómez having been a party thereto simply as a member of the contracting firm when he was the executor named by Domingo González in his will.

Fifth. Whether the registry of property of Humacao showed the cause of nullity of the lack of legal capacity of the minor and her mother to enter into contracts, and, consequently, in an affirmative case, wether the mortgage obligations constituted by Gómez, Méndez & Co. on a number of estates in favor of the American Colonial Bank and the firm of the Successors of L. Villamil & Co., by deeds of August 3, 1901, May 12, 1903, and June 23, 1905, are void, and in which mortgaged estates the plaintiff, Petrona del Carmen González had an interest which became the property of the firm of Méndez Gómez & Co. by virtue of the assignment or rights and actions contained in the deed of June 19, 1896.

We shall consider first the presumption and exception of *res judicata* which, as has been said above, was pleaded in due time by all of the defendants.

It is very important to explain in order that the discussion may be clear, that the plaintiff in this case is the same as the plaintiff in the previous action.

In the first action, which was terminated by final judgment, an action was brought to annul the deed of June 19, 1896 on the ground that a mother with parental power did not have the right to alienate the real property of her daughter except for justified causes of utility or necessity and after having received authority from the judge of the district

with a hearing of the *fiscal,* which requisites the mother of the contracting minor absolutely ignored in said deed.

Observe that article 164 of the former Civil Code which provides the above is contained in chapter three which treats of the "Effect of parental authority with regard to the property of the children."

Therefore, the plaintiff proceeding as she did at that time in asking for the annulment merely through the lack of judicial requisites and proceedings, enumerated, recognized the parental power in favor of her mother, inasmuch as the recognition made by her husband, Delfín Sierra Cuesta, who was the legal representative of the minor in the first action as guardian *ad litem* appointed for the purpose, was equivalent thereto.

So that the capacity of the mother, Petrona Resto Negrón which then—that is to say, in the first action—was recognized in an explicit and specific manner, is now attacked and rejected.

Now in this action the annulment is again sought of the said deed of June 19, 1896, on the ground that the mother never had parental power over her daughter and, consequently, could not execute the instrument nor enter into contracts with relation to the property of the minor, who, being emancipated, required a guardian duly appointed by the judge with the formalities of law to complete the capacity of the plaintiff Petrona del Carmen González, then a minor and now of age.

This ground of annulment which is now alleged as relating to the executor, Jacinto Gómez, if it exists now, it existed at the time the plaintiff brought her first action, but nevertheless, she did not plead it but only pleaded that which she thought lay under the provisions of article 164 of the former Civil Code.

But let us see whether the presumption *res judicata* is really present or not.

Joaquín Escriche defines in his dictionary *res judicata* as "what has been decided in a contradictory action by a valid judgment from which there is or can be no appeal, either because the appeal is not admissible, or because the judgment has been acquiesced in, or because the appeal has not been taken within the time prescribed by law, or having been taken, it has been held to have been abandoned."

And he continues: "*Res judicata* is presumed to be actual and the law gives it the character of irrevocability, and does not permit the parties to prove the contrary, because otherwise litigation would never end. (Law 19, tit. 22 partida 3.) From this is derived the maxim of the Roman Law: *Res judicata pro .véritate habatúr.*"

The remainder (?) which the law gives to *res judicata* is for the purpose of maintaining the public peace.

This matter has been properly regulated and now it is easier to distinguish when all the requisites which go to make it up are present.

Section 1219 of the Civil Code in force provides as follows:

\*   \*   \*   \*   \*   \*   \*

"In order that the presumption of the *res adjudicata* may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants and their capacity as such."

\*   \*   \*   \*   \*   \*   \*

"It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same."

The Supreme Court of Spain in interpreting article 1252 of the Civil Code, which is the same as section 1219 of the Code in force, established the following doctrine in its decision of November 18, 1903.

"There exists a presumption of *res judicata* when between the litigants in the previous action and the present action there is that juridical solidarity which is produced by the exercise of the action in both for the same purpose, by the invocation of the same grounds and by basing the claims on allegations which make the condition of the parties identical and also the result sought in relation with the title invoked, even though an effort be made as in this case, to establish some slight difference with respect to the person of the defendant; because if this were not so, instead of different causes of action the new reasonings thought of by the parties to contest a judgment after having become final, would, in violation of the laws and fundamental doctrine established as to the efficiency and unalterability of *res judicata,* contravene what has already been adjudged and finally decided."

It may be argued that in this action the defendants are not exactly the same as in the previous action, because in the latter all of the persons who executed the deed of June 19, 1896, the annulment of which is sought, were made defendants.

But it is necessary to take into consideration that in both actions the defendant is the commercial firm which purchased the hereditary actions and rights of the vendrix, Petrona González, and they alone are affected by the validity or nullity of the said deed.

Furthermore, said identity is not destroyed by the circumstance that in the second action one of the defendants in the first action is not made a party. Decision of the Supreme Court of Spain of May 5, 1900. So that in this respect there exists a perfect identity of persons in both actions and the capacity in which they were plaintiff and defendants is also identical.

It is true that now other entities are made defendants, namely the American Colonial Bank and Successors of L. Villamil & Co., but they are made such defendants as the mortgage creditors of the vendee commercial firm made a defendant in this action, and, consequently, they are joined by bonds of solidarity constituted by the mortgage on the property in litigation.

This new and subsequent accident cannot destroy the legal identity explained by section 1219 of the Civil Code in force which we have cited and inserted above.

There exists also identity of things, because in the first action the fundamental prayer is the delivery of the hereditary property as a consequence of the aforementioned deed, and in the second action exactly the same thing is sought.

We still have to consider whether there is identity of cause or action as was said in the former law.

We must not lose sight of the fact that in both actions the annulment of the deed of June 19, 1896 is sought, and that only the ground on which such annulment is sought is different. It is on this difference that the appellant appears principally to base her allegation that the plea of *res judicata* should be dismissed.

The following question was raised in the Supreme Court of Spain:

The validity of a document being at issue in both actions, would the presumption of *res judicata* not have any effect because in the second action grounds of nullity are alleged which are different from those which were the subject of discussion in the first action, the object of the parties in both actions being to determine who was the owner of certain property?

The case under consideration is analogous, and the Supreme Court of Spain established the following doctrine in its decision of March 14, 1898:

''Although it is evident that in this action grounds for the annulment of the title upon which Casimiro Rodríguez founded his action for recovery have been advanced which were not invoked in the previous action, it is no less true that the decision as to its validity then made in granting the recovery sought cannot but affect all the conditions thereof, because if it was not necessary for the trial court or this Supreme Court to consider some of them in deciding this appeal in cassation, because the parties do not deem it proper to allege them, in the manner in which the question was raised in

the action of 1887, and taking into consideration not only exception pleaded but the character of the action exercised, according to which the plaintiff was obliged to prove the alleged ownership, it must be acknowledged that in holding that it had been established, the legal validity of the awards made to Braulio García Vaquero for the purposes of the recovery sought was definitely and finally decided, because it is in the respective actions that the litigants must employ all their means of defense for the purpose of avoiding the disturbances and insecurity which would arise if the various reasons which might be advanced by the parties to attack a judgment after becoming final were considered as independent actions, and it is indisputable that when the validity of the title of owership filed with the complaint was discussed in 1887, the causes or reasons for annulment now alleged were already known.

"On this assumption, the Audencia of Valladolid in considering as the principal basis of the judgment in favor of the defendants the exception of *res judicata,* did not commit the violations alleged in the third, fourth and fifth grounds of the appeal, because the end sought by both parties has consisted in a determination of the ownership of certain estates derived from the Estate of María de la Devesa, and, as the court held in the action of 1887 that they belonged to Casimiro Rodríguez, it is not possible, without violating the said laws and principles relating to *res judicata* cited in said grounds, to make any pronouncement herein in conflict with the final judgment on new legal grounds which were not alleged in due time."

In another decision of January 15, 1901, the question arose in the same court as to whether the annulment of an instrument of loan having been denied on the ground that the annulment of the judicial authority which had been requested to contract the loan had not been first obtained, would the judgment produce the exception of *res judicata* in a new action brought to secure the annulment of such authority, the instrument of loan and the execution proceedings to which it gave rise?

The court decided in the affirmative, maintaining the existence of the exception of *res judicata.*

The defendant firm of Méndez, Gómez & Co. which purchased of the plaintiff the rights and actions which she had in

the previous firm of which her father, Domingo González, had been a partner, did so under a deed which they considered legal and they logically thought that if they came out victorious in this litigation, the deed would acquire an irrevocable force with respect to the plaintiff because they assumed with reason that she had alleged all that she had to allege against the said deed and under these circumstances, Gómez, Méndez & Co. defended themselves and obtained judgment in their favor on March 31, 1905, which became final and definite because although the plaintiff had appealed to the Supreme Court of the United States, the appeal was held to have been abandoned and the record was returned with the judgment appealed from for proper execution.

So that Gómez, Méndez & Co. believed that they could rest on the validity of their title, that they could without restriction make such legal transactions with said property as might be necessary in their business without the plaintiff having the right to molest them by again attacking the validity of said title on new grounds having, however, the same end in view, and which she could have alleged when she brought her first action.

This cannot be admitted because a stable and serious state of right could never be established because the party obtaining a final judgment in his favor would find himself involved in litigation as often as different reasons could be found by a fertile imagination, although known when the first action was brought.

If this were admitted unnecessary trouble and expense would be caused third persons, as in this case in which the American Colonial Bank and the Successors of L. Villamil & Co., who subsequently to the previous action and the final judgment which terminated it, entered into contracts secured by mortgage with Gómez, Méndez & Co. on certain property which constituted the final and real claim in both actions.

Therefore, the presumption and exception of *res judicata* exists, and for this reason the judgment appealed from should

be affirmed, with the costs of the appeal against the appellant and inasmuch as the case is decided on a primordial ground, it is unnecessary to consider the other questions raised in the brief filed in this Supreme Court.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and Wolf concurred.

Mr. Justice del Toro did not take part in the decision of this case.